**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**COLM MARTIN,**

                    **Plaintiff,**

                    v.

**TOWN OF ULSTER et al.,**

                    **Defendants.**
_____

**1:21:-cv-597**
**(GLS/DJS)**

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Office of Russell A. Schindler
245 Wall Street
Kingston, NY 12041

**FOR THE DEFENDANTS:**
Cook, Tucker Law Firm
85 Main Street
P.O. Box 3939
Kingston, NY 12041

**OF COUNSEL:**

RUSSELL A. SCHINDLER, ESQ.

MICHAEL T. COOK, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Colm Martin brought this action pursuant to 42 U.S.C.

§ 1983, alleging that defendants Town of Ulster and Ralph Leiter violated

his Fourth Amendment rights. (Am. Compl., Dkt. No. 4.) Martin also brought assault and battery claims against both defendants under New York State law. (*Id.*) Defendants now move for summary judgment on all claims. (Dkt. No. 27.) For the reasons that follow, defendants' motion is granted.

## II. Background

**Facts**[1]

The Town of Ulster Police Department employed Leiter and Daniel Odendahl as police officers in 2021. (Defs.' Statement of Material Facts (SMF) ¶¶ 1-2, Dkt. No. 27, Attach. 1.[2])

On February 20, 2021, Martin rode as a passenger in his friend's vehicle. (*Id.* ¶ 3.) When Officer Odendahl noticed that the vehicle's license plate did not match its registration, he pulled the vehicle over.[3] (*Id.*

---

[1] Unless otherwise noted, the facts are not in dispute.

[2] Defendants' Statement of Material Facts did not contain any citations to the record as required by N.D.N.Y. L.R. 56.1(a). The court overlooks this careless error because Martin has admitted each fact, (Dkt. No. 31, Attach. 3 at 1-2), and because the record supports them.

[3] Officer Odendahl's dashboard camera captured the traffic stop in its entirety. (Dkt. No. 33, Ex. 1.) The court has carefully reviewed this video.

2

¶ 3; Dkt. No. 27, Attach. 6, Ex. D at 9-11.)  Officer Odendahl smelled marijuana in the vehicle and radioed for assistance.  (Defs.' SMF ¶¶ 5-6.)

Officer Leiter responded to the scene and stood at the vehicle's rear while Officer Odendahl spoke to the vehicle's occupants through the driver's side window.  (*Id.* ¶¶ 7-8.)  Martin admitted to Officer Odendahl that he had smoked half of a marijuana cigarette earlier in the day and that he possessed the other half.  (*Id.* ¶¶ 9-10.)  Officer Odendahl directed Martin to drop the marijuana cigarette outside of the passenger's side window and Martin complied.  (*Id.* ¶¶ 10-11.)

Officer Leiter, standing at the vehicle's rear, did not hear Officer Odendahl's instruction and believed Martin was attempting to destroy evidence.  (*Id.* ¶ 12; Dkt. No. 27, Attach. 5, Ex. C at 16.)  Officer Leiter responded by opening the vehicle's passenger side door, grabbing Martin by the right arm, and bringing Martin to the ground.  (Pl.'s SMF ¶ 15, Dkt. No. 31, Attach. 3.)  When Martin reached the ground, Officer Leiter positioned his knee against Martin's back.  (*Id.* ¶ 21.)  Upon learning that Officer Odendahl had given Martin permission to discard the marijuana cigarette, Officer Leiter assisted Martin to his feet and back inside the

3

vehicle. (Defs.' SMF ¶ 13.) Martin alleged that the incident caused an injury to his left shoulder. (*Id.* ¶ 14.)

Officer Leiter's supervisors—Sergeant Seyfarth and Lieutenant Gramaglia of the Town of Ulster Police Department—conducted an internal review of Officer Leiter's use of force. (Pl.'s SMF ¶ 22). Their review concluded that Officer Leiter's actions were reasonable and within his authority under New York State law. (*Id.*)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

**A.  Section 1983 Claim Against Officer Leiter**

Defendants argue that summary judgment is appropriate because Officer Leiter did not use excessive force; and, even if he did, he is entitled to qualified immunity. (Dkt. No. 27, Attach. 8 at 5-9.) These contentions are addressed, in turn, below.

4

1. *Excessive Force*

The right of law enforcement to make an investigatory stop "carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, employing excessive force during a traffic stop violates the Fourth Amendment. *See id.* at 394.

To establish the use of excessive force, a plaintiff must demonstrate that the officer's actions were unreasonable such that "the government interests at stake were outweighed by 'the nature and quality of the intrusion on [the plaintiff's] Fourth Amendment interests.'" *Barlow v. Male Geneva Police Officer*, 434 F. App'x 22, 26 (2d Cir. 2011) (quoting *Graham*, 490 U.S. at 396). Though the test for reasonableness is "'not capable of precise definition or mechanical application,'" the court must consider (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the officers or others; and (3) whether the plaintiff was actively resisting or evading arrest. *Cugini v. City of New York*, 941 F.3d 604, 612-13 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396).

The officer's conduct must be judged from the perspective of a

reasonable officer on the scene, without regard to the officer's underlying motivation and without the benefit of hindsight.  *See Graham*, 490 U.S. at 396-97.  Moreover, the calculus of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.*  Accordingly, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'"  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham*, 490 U.S. at 396).

    Here, Martin argues that his removal from the vehicle was unreasonable because (1) marijuana possession was a minor offense under a statute that was later repealed and (2) he posed no immediate threat to the officers and never attempted to resist arrest.  (Dkt. No. 31, Attach. 4 at 3-4.)  However, because Officer Leiter believed that Martin was attempting to destroy evidence, the police had an interest in immediately stopping him from doing so.  *See Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 313 (S.D.N.Y. 1998) ("One factor justifying the use of force is the appearance that the suspect is secreting contraband

6

which could be used as evidence in a criminal prosecution."); *cf. Kentucky v. King*, 563 U.S. 452, 460 (2011) ("[T]he need 'to prevent the imminent destruction of evidence' has long been recognized as a sufficient justification for a warrantless search.") (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Destroying or concealing evidence that is believed to have use in a prospective prosecution is a felony offense. *See* N.Y. Penal L. § 215.40(2).

Officer Leiter faced exigent circumstances—Martin was tossing marijuana into the snow—and he made a split-second judgment to remove Martin from the vehicle in order to prevent the further destruction of evidence. *See Michigan v. Summers*, 452 U.S. 692, 702-03 (1981) (recognizing that during "frantic efforts to conceal or destroy evidence," the "risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation"). Although Officer Leiter could have chosen more passive means, his conduct must be evaluated without "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. At the time he removed Martin from the vehicle, Officer Leiter could not have known the total quantity of marijuana in the vehicle, whether the vehicle's occupants possessed other drugs, or

whether there were weapons in the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (acknowledging that the "inordinate risk confronting an officer as he approaches a person seated in an automobile" creates a "legitimate and weighty" interest in officer safety). Moreover, nothing in the record indicates that Officer Leiter positioned his knee against Martin's back with any amount of force more, or for any duration longer, than was necessary to stop the potential destruction of evidence and secure the situation: the dashboard video shows that approximately five seconds after Martin was removed from the vehicle, Officer Odendahl informed Officer Leiter that Martin was not destroying evidence; Officer Leiter positioned his knee off of Martin within about eighteen seconds after beginning to remove Martin from the vehicle; Officer Odendahl announced "sorry . . . it was a misunderstanding" within approximately twenty-two seconds after Martin's removal from the vehicle; and Officer Leiter began assisting Martin back into the vehicle less than one minute after his removal from it. (Dkt. No. 33, Ex. 1. at 9:40-10:40.) Therefore, given the unknown safety variables inherent to the traffic stop and the apparent destruction of evidence, no reasonable factfinder could conclude that Officer Leiter responded unreasonably.

2.   *Qualified Immunity*

Even if Martin's Section 1983 claim against Officer Leiter had raised a genuine issue of material fact, Officer Leiter is entitled to qualified immunity.

Qualified immunity "'shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established [statutory or constitutional] rights of which an objectively reasonable official would have known.'" *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006)).  Clearly established law cannot be defined at a high level of generality; instead, the inquiry focuses on the "specific factual situation the officers confronted, and the defendants will be entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."  *Id.* at 739 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018)) (internal quotation marks omitted).

In the context of excessive force claims, qualified immunity applies if "a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995) (citations omitted).  Thus, qualified immunity

protects an officer from liability if, on the basis of the facts known to the officer when they engaged in the conduct at issue, "officers of reasonable competence could disagree as to the lawfulness of such conduct." *Manganiello v. City of New York*, 612 F.3d 149, 164-65 (2d Cir. 2010) (citation omitted); *see Cugini*, 941 F.3d at 615.

In this case, the question is whether there was clearly established law on February 20, 2021 that it was unlawful to forcibly remove and bring to the ground a vehicle passenger who is believed to be destroying evidence, such that no reasonable officer would believe that Officer Leiter's conduct was lawful.

Martin cites no then-existing precedent that squarely governs the situation that Officer Leiter faced. Instead, Martin argues that Officer Leiter violated clearly established law because under "the three pronged analysis for determining whether force used is excessive as stated in *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir., 2010) . . . none of the factors are in a [sic] Defendant Leiter's favor." (Dkt. No. 31, Attach. 4 at 5.) This argument fails because it merely recites the factors relevant to determining reasonableness and makes no attempt to show how the factual context in *Tracy* would give a reasonable officer notice that Officer Leiter's conduct

10

was unlawful given the specific circumstances. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (noting that, because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case," officials are entitled to qualified immunity unless existing precedent "squarely governs the specific facts at issue") (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)) (internal quotation marks omitted); *City & County of San Fransisco v. Sheehan*, 575 U.S. 600, 613 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").

The court is not aware of any case law, nor has Martin cited any, which would have made it clear that Officer Leiter's conduct was unlawful. *See Shakir v. Stankye*, 805 F. App'x 35, 37-38 (2d Cir. 2020) ("[A] plaintiff attempting to overcome an officer's qualified immunity must generally 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'") (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). Moreover, given the police

interest in preserving evidence and wide latitude police are given to respond to exigent circumstances, a reasonable officer, who was under the impression that Martin was attempting to destroy evidence, could have believed that it was lawful to remove Martin from the vehicle, bring him to the ground, and briefly position their knee against Martin's back for less than thirty seconds while Martin's hands were unrestrained. *See, e.g.*, *Singleton*, 1 F. Supp. 2d at 313 ("One factor justifying the use of force is the appearance that the suspect is secreting contraband which could be used as evidence in a criminal prosecution."); *Lennon*, 66 F.3d at 426 (rejecting an excessive force claim where police forcibly removed the plaintiff from a car and injured her wrist in the process, noting that it was necessary to do so to execute the arrest); *Davis v. City of Rochester*, No. 14-CV-6562L, 2022 WL 6885334, at *28 (W.D.N.Y. Oct. 12, 2022) ("[T]he Fourth Amendment does not require officers to use the least possible degree of force."). As a result, because not every reasonable officer would view his actions as unlawful, Officer Leiter is entitled to qualified immunity.

**B.    Assault and Battery Claims**

Except for Section 1983's state action requirement, "[t]he elements of New York assault and battery and Section 1983 excessive force claims are

12

'substantially identical.'" *See Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (citing *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)). The claims travel lockstep. *See id.* Accordingly, because Officer Leiter is entitled to summary judgment on Martin's Section 1983 claim for excessive force, Officer Leiter and Town of Ulster are entitled to summary judgment on Martin's assault and battery claims.

### C.     Section 1983 Claim Against Town of Ulster

Martin argues that Sergeant Seyfarth and Lieutenant Gramaglia's subsequent finding that Officer Leiter's use of force was reasonable constitutes a failure by policymakers to provide adequate supervision, amounting to deliberate indifference to Martin's constitutional rights. (Dkt. No. 31, Attach. 4 at 5-6.)

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). A municipality is not subject to suit under Section 1983 unless "action pursuant to official municipal policy of some nature caused a constitutional tort." *See id.* at 691. There must be a "direct casual link between a municipal policy or custom and the alleged constitutional deprivation*." City of Canton v. Harris*, 489 U.S. 378, 385

13

(1989).

Because Martin cannot establish that Officer Leiter's conduct constituted excessive force, Martin did not suffer a constitutional violation for which Town of Ulster could be liable.  *See Segal v. City of New York*, 459 F.3d 207, 219-20 (2d Cir. 2006) (holding that a district court need not reach municipal liability claim where underlying constitutional claims were properly dismissed).  Furthermore, Sergeant Seyfarth and Lieutenant Gramaglia's subsequent finding that Officer Leiter acted reasonably could not have caused the alleged constitutional violation because the finding was made after the incident—a single incident of wrongdoing is insufficient to establish the systematic and repeated failure necessary for a "policy or custom" under *Monell*.  *See, e.g.*,*Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the city and the opportunity to conform to constitutional dictates.'") (quoting *Canton*, 489 U.S. at 395); *Ngeudi v. Caulfield*, 813 F. App'x 1, 3 (2d Cir. 2020) ("While [the plaintiff] points to his own treatment as evidence of a custom, a single case is insufficient to establish the existence of such a practice."); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980) (noting that "absent more

evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality"). Accordingly, Martin's Section 1983 claim against Town of Ulster fails as a matter of law.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment, (Dkt. No. 27), is **GRANTED** and the amended complaint, (Dkt. No. 4), is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 23, 2023
Albany, New York

*Gary L. Sharpe*
Gary D. Sharpe
U.S. District Judge